UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILMA ARMER, *et al.*,<br><br>              Plaintiffs,<br><br>    v.<br><br>OPENMARKET, INC., *et al.*,<br><br>              Defendants. | No. C08-1731RSL<br><br>ORDER GRANTING IN PART SPRINT'S MOTION FOR AN AWARD OF ATTORNEY'S FEES |

This matter comes before the Court on "Sprint's Motion for Reimbursement of Attorneys' Fees and Costs." Dkt. # 86. Sprint seeks an award of $362,646.17 to compensate it for fees and costs incurred in defending against plaintiffs' claims, defending against co-defendant OpenMarket's cross-claims, and enforcing its right to indemnification from OpenMarket. Having reviewed the papers submitted by the parties and the remainder of the record, the Court finds as follows:

(1) Contractual fee-shifting agreements are enforceable under Kansas law, which governs this dispute. Credit Union One of Kan. v. Stamm, 867 P.2d 285, 287 (Kan. 1994); Messaging Application Services Agreement ("MASA") ¶ 13.2.

(2) The Court has already determined that, under § 10.2 of the MASA, OpenMarket had a duty to defend Sprint from all claims, damages, losses, liabilities, costs, expenses, and reasonable attorney's fees arising out of plaintiffs' Second Amended Complaint ("SAC"). See Dkt. # 76 at 2-3. Reasonable costs incurred in defending the claims asserted in the SAC are,

ORDER GRANTING IN PART SPRINT'S
MOTION FOR ATTORNEY'S FEES

1  therefore, recoverable.

2  (3) The Court has not considered whether the allegations of the First Amended
3  Complaint ("FAC") triggered OpenMarket's duty to defend and indemnify.  Sprint asserts that
4  the claims asserted against it in the FAC, like those in the SAC, arose solely from OpenMarket's
5  acts or omissions.  A review of the two complaints shows that the FAC contained allegations of
6  wrongdoing on the part of Sprint that were later deleted from the SAC.  For example, plaintiff
7  initially alleged that Sprint had knowledge of and was complicit in OpenMarket's wrongful
8  billing scheme and that Sprint had engaged in unfair or deceptive acts or practices in violation of
9  the Washington Consumer Protection Act.  See, e.g., FAC ¶¶ 22-24, 40(b), and 63-65.  These
10 allegations are material under § 10.2 of the MASA because they indicate that the claims asserted
11 against Sprint arose directly from Sprint's conduct, not from an act or omission of OpenMarket.
12 Sprint has not identified any fees or costs incurred in response to the FAC that were covered by
13 the contractual indemnity provision.  No fees or costs incurred before June 19, 2009, will be
14 awarded.

15 (4) OpenMarket argues that the "American Rule" precludes the recovery of attorney's
16 fees incurred in enforcing a claim of indemnity.  While this may be a correct statement of law in
17 the tort context (see Vallejos v. C.E. Glass Co., 583 F.2d 507, 510 (10th Cir. 1978) (applying
18 New Mexico law)), where the parties have negotiated a contractual indemnification provision, its
19 terms govern the reimbursement of attorney's fees (see Nat'l Minority Supplier Dev. Council
20 Bus. Consortium Fund, Inc. v. First Nat'l Bank of Olathe, 83 F. Supp.2d 1200, 1205-06 (D. Kan.
21 1999)).  Section 13.3 of the MASA provides:

> **Forum Selection; Attorney's Fees.**  Except to the extent necessary for Sprint to enforce indemnity or defense obligations under this Agreement, any court proceeding brought by either party must be brought, as appropriate, in Kansas . . . . The prevailing party in any formal dispute will be entitled to reasonable attorney's fees and costs (including reasonable expert fees and costs), unless the prevailing party rejected a written settlement offer that exceeds the prevailing party's recovery. . . ."

ORDER GRANTING IN PART SPRINT'S
MOTION FOR ATTORNEY'S FEES            -2-

1 Under Kansas law, "[a] contract for indemnity is construed in accordance with the general rules
2 for the construction of contracts. The cardinal rule is to ascertain the intention of the parties and
3 to give effect to that intention if it can be done consistently with legal principles." Bartlett v.
4 Davis Corp., 547 P.2d 800, 807 (Kan. 1976) (quoting 41Am. Jur. 2d Indemnity § 13). The plain
5 language of § 13.3 entitles Sprint to the reasonable expenses, including attorney's fees,
6 associated with forcing OpenMarket to provide the defense and indemnification promised under
7 § 10.2 of the MASA.

8 OpenMarket argues that the introductory clause of the venue provision modifies
9 the promise to pay reasonable attorney's fees and costs to the prevailing party, such that the
10 promise does not apply to Sprint's efforts to "enforce indemnity or defense obligations under
11 this Agreement . . . ." Neither the rules of grammar nor the rules of construction supports such
12 an interpretation. Section 13.3 addresses two separate topics: venue and attorney's fees. The
13 parties recognized that they could not control the location of suits initiated by third-parties and
14 therefore authorized Sprint to seek defense and indemnification within the pending suit rather
15 than having to initiate a separate litigation in Kansas. The venue and attorney's fees provisions
16 are related in that they establish the rules of conflict resolution between the parties, but each
17 provision is self-sufficient. There is no justification for superimposing a limitation from one
18 provision into the other.

19 As shown by the cross-claims filed by defendants, there was a formal dispute
20 between the parties to the MASA regarding their defense and indemnity obligations under
21 § 10.2. OpenMarket has not established the existence of a written settlement offer of any
22 amount. Because Sprint prevailed, it is entitled to its reasonable attorney's fees and costs under
23 § 13.3 of the MASA.

24 (5) Sprint seeks $ 11,160.42 in fees associated with responding to the SAC (see Dkt.
25 # 97, Ex. D at 13-16) and $283,979.71 in fees incurred in enforcing its contractual rights against
26 OpenMarket. In determining the reasonableness of an attorney's fee petition, courts applying

ORDER GRANTING IN PART SPRINT'S
MOTION FOR ATTORNEY'S FEES            -3-

Kansas law look to the factors set forth in Rule 1.5(a) of the Kansas Rules of Professional Conduct. <u>Johnson v. Westhoff Sand Co., Inc.</u>, 135 P.3d 1127, 1135 (Kan. 2006). A district court is considered an expert on the issue of attorney's fees and "may apply its own knowledge and professional experience in determining the value of service rendered." <u>Id.</u> (quoting <u>Serv. v. Pyramid Life Ins. Co.</u>, 440 P.2d 944, 221-22 (Kan. 1968)). The relevant factors, and the Court's evaluation of them, are as follows:

>   (a) **The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.**
>   Defense of plaintiffs' claims. The SAC asserts widespread billing irregularities on behalf of a nationwide class. The potential exposure was significant, justifying a thorough evaluation of the claims, retention of national counsel, and an aggressive response.
>   Enforcing duty to defend and indemnify. The dispositive issue involved the interpretation of a single contract provision and its application to the underlying complaint. The same type of analysis is performed in almost all insurance litigation and is not particularly complex. Basic legal competence is all that is required to evaluate and enforce the contractual provision at issue here.
>
>   (b) **The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.** The Court does not believe this consideration is applicable. Two of the three firms retained by Sprint employ hundreds of attorneys, and there is no indication that any of the firms would have to turn away work to represent Sprint in this matter.
>
>   (c) **The fee customarily charged in the locality for similar legal services.** The only evidence regarding fees charged in the Seattle market is the invoices provided by Perkins Coie. The partner working on this matter charged $385/hour and the associates charged $345/hour. Perkins Coie's rates are generally considered "high" for the Seattle market, but are regularly approved in this district given the quality of the services provided and the complex matters the firm generally handles. Sprint has provided no evidence from which the Court could find that the hourly rates charged by the partners at Goldberg Kohn ($540/hour) and/or Quinn Emmanuel ($575/hour) are reasonable in this locality.
>
>   (d) **The amount involved and the results obtained.** The SAC gave rise to the possibility of significant liability on Sprint's part. Whether plaintiffs will

ultimately prevail on their claims cannot be determined, but Sprint's counsel has ably shielded their client from the risks of further litigation.

(e) **The time limitations imposed by the client or by the circumstances.** There is no indication that this litigation was particularly urgent or that time exigencies impacted counsel's performance.

(f) **The nature and length of the professional relationship with the client.**
Defense of plaintiffs' claims. Each of the three law firms played a different role in the defense of plaintiffs' class action claims. Goldberg Kohn, a Chicago-based firm, was retained as lead counsel. Quinn Emmanuel has been handling "premium service cases" around the country for Sprint, and it was hired to provide expertise and oversight regarding these issues. Perkins Coie, a Seattle firm, was retained to sign pleadings and appear on Sprint's behalf as required by our Local General Rules.
Enforcing duty to defend and indemnify. Sprint has not explained what role Quinn Emmanuel played in enforcing the defense and indemnification provisions of the MASA. As noted above, Quinn Emmanuel's expertise was in handling the type of claims asserted by plaintiffs. Much of the work performed by Quinn Emmanuel appears to involve reviewing the work of others and participating in conferences. "There is a difference between assistance of co-counsel which is merely comforting or helpful and that which is essential to proper representation." Mares v. Credit Bureau of Raton, 801 F.2d 1197, 1206 (10th Cir. 1986).

(g) **The experience, reputation, and ability of the lawyer or lawyers performing the services.** Although Sprint has provided no information regarding its counsel, the Court has no reason to assume that they are anything other than highly qualified and reputable.

(h) **Whether the fee is fixed or contingent.** Sprint was billed through monthly invoices from each of its three law firms. Sprint has paid these invoices in the ordinary course of business, thereby suggesting that it, at least, believes the amounts billed are reasonable.

(6) Having considered all of the applicable factors, the Court finds that a reasonable attorney's fee in this case includes the entire amount spent defending the claims asserted in the SAC plus $190,000.00 for enforcing OpenMarket's contractual obligations. The requested

1  amount has been reduced to reflect local hourly rates, to delete Quinn Emmanuel entries that did
2  not contribute to the prosecution of Sprint's contractual claim, and to reflect the unexceptional
3  nature of this contract dispute.[1]

5        For all of the foregoing reasons, Sprint's motion for reimbursement is GRANTED
6  in part and DENIED in part.  OpenMarket is hereby ordered to pay to Sprint $201,160.42 in fees
7  and $2622.74 in costs.

10       Dated this 7th day of April, 2010.

*/s/ Robert S. Lasnik*

12       Robert S. Lasnik
13       United States District Judge

---

[1] The billing information provided by Sprint provides sufficient detail to evaluate the reasonableness of the charges.

ORDER GRANTING IN PART SPRINT'S
MOTION FOR ATTORNEY'S FEES   -6-